## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BILLY GREEN, JR.<br>6083 Claire Drive<br>Elkridge, MD 21075<br><br>*Plaintiff*,<br><br>v.<br><br>KIRSTJEN M. NIELSEN, Secretary<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY<br>1300 Pennsylvania Ave., NW<br>Washington, DC 20004<br><br>*Defendant.* | Case No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Billy Green ("Plaintiff") by and through his counsel, Morris E. Fischer, Esq., hereby submits the following Complaint, on information and belief formed after reasonable inquiry under the circumstances, against Defendant U.S. Department of Homeland Security ("Defendant").

### JURISDICTION, PARTIES, & EXHAUSTION

1.      This action is brought under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act 29 U.S.C. § 621 *et. seq.* ("ADEA").

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law and 28 U.S.C. § 1343.

3.      Jurisdiction is based on Sections 4 and 7 of the ADEA, 29 U.S.C. §§ 623 and 626.

4.      Venue in this court is proper pursuant to 28 U.S.C. § 1391.

5.    There is an actual controversy between Plaintiff and Defendant.

6.    Plaintiff is an individual who resides at 6083 Claire Drive, Elkridge, MD 21075.

7.    Defendant is a federal agency located at 1300 Pennsylvania Ave., NW Washington, DC 20004.

8.    Defendant Kirstjen M. Nielsen is Secretary of the U.S. Department of Homeland Security and is being sued in her official capacity as such.

9.    Defendant is properly named as the head of the Agency pursuant to 42 U.S.C. § 2000e-16(c).

10.   Plaintiff was employed by Defendant as a Detention and Deportation Officer, GS-1801-14, for the Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations, which is part of the U.S. Department of Homeland Security.

11.   Plaintiff filed a formal EEO race, color, sex, age, and retaliation complaint on November 12, 2015.

12.   ICE accepted Plaintiff's formal EEO complaint on February 10, 2016.

13.   Plaintiff's EEO complaint was investigated from March 23, 2016 to August 19, 2016.

14.   On June 23, 2016, Plaintiff requested an EEOC hearing.

15.   On July 5, 2018, Plaintiff withdrew from his EEOC hearing and requested a final agency decision.

16.   On July 9, 2018, Plaintiff's EEOC case was dismissed from the hearings process and Plaintiff's complaint was returned to Defendant to issue a final agency decision.

17.   On September 20, 2018, Defendant's Office for Civil Rights and Civil Liberties remanded Plaintiff's case for a supplemental investigation before it could issue a final agency decision.

18.     Plaintiff is still waiting on the final agency decision from Defendant.

19.     Plaintiff has satisfied all administrative requirements and exhausted all of his

administrative remedies before bringing this claim.

**FACTS**

20.     Plaintiff is a brown African American male and was born in 1968.

21.     Plaintiff was a Detention and Deportation Officer, GS-1801-14, ERO Taskings for ICE's

Enforcement and Removal Operations.

22.     Plaintiff worked in the Enforcement Removal Operation ("ERO") Taskings Unit.

23.     The ERO Taskings Unit is under the ERO Front Office.

24.     Plaintiff worked in Washington, DC.

25.     ICE is part of the U.S. Department of Homeland Security.

26.     Plaintiff worked for Defendant from February 2000 to September 2018.

27.     Since November 2009, Plaintiff has been a Detention and Deportation Officer in

Washington, DC.

28.     Since 2000, Plaintiff received administratively uncontrollable overtime ("AUO") while

working in the INS Office of Investigations and in ERO since 2006.

29.     Since September 2014, Plaintiff has been a Detention and Deportation Officer and a

Firearms Instructor.

30.     Dashanta Faucette was the Chief Supervisory Detention and Deportation Officer in the

Executive Information Unit and in September 2014 became Plaintiff's first-line

supervisor.

31.     Ms. Faucette was a manager.

32.     Ms. Faucette is a black female and was born in 1972.

33.    Ms. Faucette was aware of Plaintiff's race, color, sex, approximate age, and prior
protected EEO activity.

34.    Plaintiff has personally spoken with Ms. Faucette about racial discrimination that he has
experienced.

35.    Plaintiff has personally spoken with Ms. Faucette about his prior protected activity.

36.    Jacalynne Becker Klopp was the Chief of Staff for Enforcement and Removal Operations
and was Plaintiff's second-line supervisor.

37.    Ms. Klopp was a manager.

38.    Ms. Klopp is a white Caucasian female and was born in 1983.

39.    Ms. Klopp was aware of Plaintiff's race, color, sex, approximate age, and prior EEO
activity.

40.    Tom Homan was the Executive Associate Director and was Plaintiff's fourth-line
supervisor.

41.    Mr. Homan was a manager.

42.    Mr. Homan is a white Caucasian male and was born in 1961.

43.    Mr. Homan became aware of Plaintiff's prior protected EEO activity in December 2013.

44.    In 2011, Plaintiff filed an EEO discrimination complaint against Defendant.

45.    Managers who work for Defendant have access to a system that shows which employees
have EEO complaints filed and pending.

46.    Ms. Klopp and Mr. Homan had knowledge of Plaintiff's prior protected EEO activity
from 2011.

47.     Mr. Homan and Ms. Klopp retaliated against Plaintiff because they did not allow him to transfer out of the ERO Taskings Unit back to his previous unit or a unit that receives AUO.

48.     Plaintiff met with Ms. Klopp in her office and advised her of his desire to transfer out of the ERO Taskings Unit.

49.     Usually, employees that work for the Chief of Staff and the ERO Front Office are transferred to preferable, better, or higher level positions due to the nature of the assigned duties.

**Unreasonable Workload and Deadlines**

50.     From September 2014 to October 2015, there was limited staff in the ERO Taskings Unit.

51.     Plaintiff's workload was unfairly impacted from September 2014 to October 2015.

52.     During that time, Plaintiff was responsible for ensuring that due dates were met for the assigned tasks.

53.     Plaintiff missed some deadlines because the deadlines were unreasonable and there was not enough time to meet all of the deadlines because of the limited staff.

54.     The Chief of Staff, Ms. Klopp, and Unit Chief, Ms. Faucette, were responsible for assigning Plaintiff's work, deadlines, and establishing workloads.

55.     Ms. Faucette and Ms. Klopp failed to acknowledge the issues regarding Plaintiff's workload, including the limited staff and unreasonable deadlines.

56.     In ERO Taskings, contractors work for a private company beside federal employees.

57.     The private contractors worked on several different assignments, besides Taskings.

58.     Work assignments arrive in a mailbox where each officer voluntarily chooses tasks to work on at his/her own pace, and officers do not have to meet a particular quota.

59.    Starting in September 2014, Ms. Klopp and Ms. Faucette had Plaintiff add an extra step
       to his tasks and instructed him to send work to the contractor staff, which gave Plaintiff
       unnecessary additional work.

60.    Routinely, the contractors would direct Plaintiff to send these particular tasks back and
       forth to the same or different units or divisions.

61.    Going through the contractors added unnecessary time in completing a task.

62.    During this time, Caucasian staff was able to transfer out of the ERO Taskings Unit.

63.    However, Plaintiff was not allowed to transfer out of the ERO Taskings Unit.

64.    Starting in September 2014, Plaintiff noticed that Caucasian staff members in his unit,
       such as Clint Haggard and Jennifer Lamoureux, were selected to transfer from the ERO
       Taskings Unit to positions in the Enforcement Division and Removal Division that
       Plaintiff himself requested.

65.    Plaintiff applied for the same position and announcement number as Ms. Lamoureux.

66.    Ms. Lamoureux is a white Caucasian female and was born in 1972.

67.    Mr. Haggard is a white Caucasian male and was born in 1967.

68.    Defendant also allowed Janice Guiden and Roberto Salazer to transfer out of the ERO
       unit.

69.    Ms. Guiden is an African American female who is approximately under the age of 50.

70.    Mr. Salazer is a Hispanic male who is approximately under the age of 50.

71.    Plaintiff was older than most of the contractor staff and most of the ERO staff.

72.    Most of the staff that was allowed to transfer out of the ERO Taskings Unit was younger
       than Plaintiff.

73.    The contractors who worked in the ERO unit were mainly female.

74.    Plaintiff and his coworker Illya Avery were subjected to understaffing in the ERO Taskings Unit.

75.    Mr. Avery is an African American male who is approximately over the age of 50.

76.    Beginning in January 2015, Plaintiff addressed his workload and deadline concerns with Ms. Faucette and Ms. Klopp.

77.    Ms. Faucette and Ms. Klopp occasionally had an intern or another team member irregularly assist in the heavy workload for ERO Taskings Unit, but they did not provide any permanent solutions.

78.    Ms. Klopp made efforts to hire more employees after Plaintiff filed his EEO complaint.

**Contractors Instructing Plaintiff**

79.    Contractors have reviewed Plaintiff's tasks and unnecessarily instructed him on the task's next steps.

80.    Plaintiff's workload unnecessarily increased when private contractors reviewed Plaintiff's tasks.

81.    It is against government policy for private contractor staff to duplicate and unnecessarily review Plaintiff's workload.

82.    Management, including Ms. Faucette and Ms. Klopp, allowed contractors to duplicate and unnecessarily review and direct Plaintiff in his work assignments, which went against government policy.

83.    Ms. Klopp manages and directs the contractors.

84.    Plaintiff was not the only one who received instructions from contractor staff.

85.    Contractors, in the course of their regular work, do sometimes pass instructions to federal employees on behalf of Ms. Klopp or another manager in the ERO front office.

86.     The contractors instructing Plaintiff unnecessarily increased his workload and caused him an increased level of emotional distress.

87.     Mr. Homan also allowed contractors to give Plaintiff instructions.

88.     Plaintiff discussed his concern regarding contractor staff passing instructions to him with Ms. Faucette, Ms. Klopp, and Mr. Bernacke.

89.     Michael Bernacke is either a Caucasian or Hispanic/Latino male and was born in 1986.

90.     Mr. Bernacke was assigned to Plaintiff's unit and served in an acting capacity as a Deputy Chief of Staff until he was permanently promoted to Deputy Chief of Staff.

91.     Plaintiff was in the same chain of command as Mr. Bernacke.

**Decertification of Administratively Uncontrollable Overtime**

92.     Administratively uncontrollable overtime ("AUO") is premium pay for employees working irregular or occasional overtime.

93.     In or around February 19, 2014, Defendant removed Plaintiff's AUO eligibility.

94.     All officer positions under, and including, the ERO Front Office were decertified from AUO based on a determination of the ICE Office of Human Capital.

95.     Plaintiff's officer position in the ERO Taskings Unit became ineligible for AUO.

96.     ICE Office of Human Capital makes decisions regarding AUO determinations on a position by position basis.

97.     AUO cannot be removed from any one particular employee, but rather must be removed from an entire group of employees.

98.     In July 2015, Plaintiff found out that other employees in ERO continued to receive AUO after Plaintiff lost his AUO eligibility.

99.     Michael Bernacke continued to receive AUO after Plaintiff lost his AUO eligibility.

100.   Mr. Bernacke worked in the ERO Front Office.

101.   The Taskings Unit is within the Front Office.

102.   Plaintiff performed the same duties as Mr. Bernacke.

103.   Clint Haggard continued to receive AUO after Plaintiff lost his AUO eligibility due to his
       transfer to the Enforcement division.

104.   Jennifer Lamoureaux continued to receive AUO after Plaintiff lost his AUO eligibility
       due to her transfer to the Removal division.

105.   Matthew Murphy, Michael Zachowski, Russ Hott, Joseph Simon, Michael Saucier, Eric
       Werderitch, Joshua Coster, James Dobson, Melissa Deleon, Lisa Hoechst, and Frances
       Jackson were allowed to work in either an acting or permanent staff position in the ERO
       Front Office and continued to receive AUO.

106.   Mr. Murphy, Mr. Zachowski, Mr. Hott, Mr. Simon, Mr. Saucier, Mr. Werderitch, Mr.
       Coster, Mr. Dobson, Mr. Jackson, Ms. Deleon, and Ms. Hoechst are either Caucasian or
       Hispanic and significantly younger than Plaintiff.

107.   Dan Weatherton and Frances Beya also transferred out of the Taskings Unit and
       continued to receive AUO.

108.   Mr. Weatherton is an African American male who is under the age of 40.

109.   Mr. Beya is an African American male who is under the age of 40.

110.   Plaintiff had substantially more experience than Mr. Weatherton and Mr. Beya.

111.   Plaintiff sent multiple transfer request emails to Mr. Homan about wanting to have AUO
       re-instated or be transferred to a unit that allows AUO.

112.   Mr. Homan did not respond.

113.   Mr. Homan is in charge of approving transfers and promotions.

114.    These transfers are approved by Mr. Homan who delegates it to his lower level managers.

**Management Taking White Employee to Lunch**

115.    In or around June 2015, Andrew Orton began working for the ERO Taskings Unit.

116.    Andrew Orton was a new employee.

117.    In July 2015, Ms. Klopp took Andrew Orton out to lunch.

118.    Mr. Orton is a white Caucasian male.

119.    Ms. Klopp did not offer the same opportunity to Plaintiff.

120.    Plaintiff complained to Ms. Faucette about Ms. Klopp taking out Mr. Orton to lunch and told her that it was prejudicial.

121.    After Plaintiff's complaint to Ms. Faucette, Ms. Klopp later ordered lunch for the entire unit to show her appreciation of everyone.

122.    Mr. Orton worked in the ERO Taskings Unit for only three months and was allowed to transfer to the Removal Division.

123.    Mr. Orton has since transferred to either one or two other units that have AUO.

**Contractor Abuse**

124.    From September 2014 to August 2015, Ms. Klopp permitted contractor staff to badger and harass Plaintiff.

125.    In August 2015, a female contractor questioned Plaintiff and acted as if she was his supervisor.

126.    Plaintiff notified Ms. Faucette about the incident.

127.    Ms. Faucette then notified Ms. Klopp about the incident.

128.    Ms. Faucette met with the contractor and also met with Ms. Klopp.

129.    Ms. Klopp told Ms. Faucette that she would speak to the contractor staff.

130.   Ms. Klopp met with Ms. Faucette and the supervisor of the contractor to address the incident.

131.   Ms. Klopp never spoke to Plaintiff about it nor advised him that the incident was being addressed.

132.   A government employee and fellow law enforcement officer, Chief of Staff Lisa Hoechst of the Enforcement division sent an email to the group mailbox and said that one of the tasks that Plaintiff sent her was "Bullshit."

133.   Ms. Faucette and Ms. Klopp were not aware of frivolous complaints against Plaintiff and did not receive any email complaints against him.

134.   Plaintiff spoke with Ms. Faucette about the above email from Ms. Hoechst.

135.   Ms. Faucette did not say that she would address Plaintiff's concern.

136.   Ms. Faucette told Plaintiff that people were complaining about the tasks that he was assigning to them.

**Plaintiff's Non-Selections**

137.   Plaintiff is well known to most, if not all, of the management staff in his duty location of Washington, DC.

138.   Mr. Homan must approve transfers and promotions.

139.   Plaintiff applied for numerous lateral GS-1801-14 Detention and Deportations Officer positions in 2014 and 2015.

140.   Plaintiff applied to those jobs through USAJOBS, the Assistant Director of the specific division within the vacancy, or through Mr. Homan.

141.   Plaintiff's resume provides an indication of his age.

**Announcement Number LAG-ERO-1166767-LKS-130 (July 30, 2014)**

142. On July 30, 2014, Plaintiff applied as a non-competitive candidate for vacancy
     announcement number LAG-ERO-1166767-LKS-130 via email to Tae Johnson.

143. Vacancy announcement number LAG-ERO-1166767-LKS-130 has AUO.

144. Tae Johnson is the Assistant Director for Custody Management.

145. Mr. Johnson has no organizational relationship to Plaintiff.

146. Mr. Johnson is a black African American male and was born in 1970.

147. Mr. Johnson was the selecting official for vacancy announcement number LAG-ERO-
     1166767-LKS-130.

148. Mr. Johnson was aware of Plaintiff's race, color, sex, and approximate age; however he
     was not aware of Plaintiff's prior EEO activity.

149. No applicants were interviewed for vacancy announcement number LAG-ERO-1166767-
     LKS-130.

150. On September 11, 2014, Plaintiff was notified that he was not selected for Agency
     announcement number LAG-ERO-1166767-LKS-130, position of Detention and
     Deportation Officer, in the Alternatives to Detention program via USA Jobs.

151. Plaintiff sent Mr. Homan follow-up emails regarding his non-selection for this position
     on different dates.

152. Plaintiff was qualified for vacancy announcement number LAG-ERO-1166767-LKS-130.

153. Plaintiff met the job requirements for vacancy announcement number LAG-ERO-
     1166767-LKS-130.

154. Defendant's Selection Certificate did not list Plaintiff as a qualified applicant.

155. Defendant selected Brian Schuster for announcement number LAG-ERO-1166767-LKS-130.

156. On October 19, 2014, Defendant placed Mr. Schuster in the position.

157. Applicants' resumes were ranked based on experience in several key areas outlined in the vacancy announcement including interpreting and applying immigration laws, docket management, training, liaison, and ATD evaluations.

158. Erik Carbonneau and Jaxon Sheriff-Parker were involved in reviewing the resumes of applicants for vacancy announcement number LAG-ERO-1166767-LKS-130.

159. Mr. Carbonneau and Mr. Sheriff-Parker were on the selection panel for vacancy announcement number LAG-ERO-1166767-LKS-130.

160. Mr. Carbonneau was the Unit Chief of Alternatives to Detention.

161. Mr. Carbonneau did not know Plaintiff and was not aware of Plaintiff's age, color, race, or sex at the time of the selection process.

162. Mr. Carbonneau is a white Caucasian male and was born in 1973.

163. Mr. Sheriff-Parker was the Enforcement Program Manager.

164. Mr. Sheriff-Parker did not know Plaintiff and was not aware of Plaintiff's age, color, race, or sex at the time of the selection process.

165. Mr. Sheriff-Parker is a white Caucasian male and born in 1966.

166. Mr. Carbonneau reviewed, scored, and rank ordered the applications for vacancy announcement number LAG-ERO-1166767-LKS-130.

167. Mr. Carbonneau then sent his score sheet and recommendations to Mr. Sheriff-Parker for concurrence.

168. Mr. Carbonneau recommended Mr. Schuster to fill vacancy announcement number LAG-ERO-1166767-LKS-130 to Mr. Johnson.

169. Mr. Carbonneau did not receive or review Plaintiff's application for vacancy announcement number LAG-ERO-1166767-LKS-130.

170. Mr. Sheriff-Parker reviewed resumes and scored them using a matrix for vacancy announcement number LAG-ERO-1166767-LKS-130.

171. Mr. Sheriff-Parker concurred with Mr. Carbonneau's recommendation to select Mr. Schuster for vacancy announcement number LAG-ERO-116767-LKS-130.

172. Mr. Sheriff-Parker did not receive or review Plaintiff's application for vacancy announcement number LAG-ERO-1166767-LKS-130.

173. Mr. Sheriff-Parker did not see Plaintiff's name on any list of names he received from Mr. Carbonneau to review or make recommendations for vacancy announcement number LAG-ERO-1166767-LKS-130.

174. Mr. Sheriff-Parker is married to Jennifer Parker-Sheriff.

175. Plaintiff named Ms. Jennifer Parker-Sheriff in his 2011 EEO complaint.

176. Mr. Sheriff-Parker is aware of Plaintiff's prior EEO activity due to his wife being named in his first EEO case for receiving a position that she was not qualified for without an announcement, which Plaintiff was unable to apply.

**Announcement Number LAG-ERO-1396746-BB-103 (May 14, 2015)**

177. On May 14, 2015, Plaintiff applied as a non-competitive candidate for vacancy announcement number LAG-ERO-1396746-BB-103, position as a Detention and Deportation officer in the Post Order Custody Review Unit, GS-1801-14 located in Washington, DC via USA Jobs.

178.   Vacancy announcement number LAG-ERO-1396746-BB-103 is covered by AUO.

179.   Defendant did not select Plaintiff for vacancy announcement number LAG-ERO-1396746-BB-103.

180.   On July 6, 2015, Plaintiff received an automated notice of results email confirming his application package for vacancy announcement number LAG-ERO-1396746-BB-103 and gave him a perfect rating of 100.

181.   On July 6, 2015, Plaintiff received an automated message regarding vacancy announcement number LAG-ERO-1396746-BB-103, which stated that he was qualified as a non-competitive applicant.

182.   On or about September 21, 2015, Plaintiff was notified that he was not selected for vacancy announcement number LAG-ERO-1396746-BB-103.

183.   After Plaintiff applied to vacancy announcement number LAG-ERO-1396746-BB-103, Defendant hired a number of employees that were younger and less experienced than Plaintiff.

184.   Plaintiff's resume indicates his age.

185.   Plaintiff met the job requirements for vacancy announcement number LAG-ERO-1396746-BB-103.

186.   Plaintiff was qualified for vacancy announcement number LAG-ERO-1396746-BB-103.

187.   Plaintiff did not receive any information regarding the selection package and selecting officials in the Report of Investigation from the Agency for vacancy announcement number LAG-ERO-1396746-BB-103.

**Announcement Number LAG-ERO-1434830-BB-118 (July 2015)**

188.     In or around July 2015, Plaintiff applied as a non-competitive candidate for vacancy announcement number LAG-ERO-1434830-BB-118, for the position of Detention and Deportation Officer in the Criminal Alien Division, GS-1801-14 located in Washington, DC.

189.     Plaintiff was listed as a qualified applicant on the certificate list.

190.     Defendant did not select Plaintiff for vacancy announcement number LAG-ERO-1434830-BB-118.

191.     Plaintiff was qualified for vacancy announcement number LAG-ERO-1434830-BB-118.

192.     Plaintiff met the job requirements for vacancy announcement number LAG-ERO-1434830-BB-118.

193.     On July 28, 2015, Plaintiff received an automated notice of results email confirming his application package for vacancy announcement number LAG-ERO-1434830-BB-118.

194.     On July 30, 2015, Plaintiff received an automated message stating that he was qualified as a non-competitive candidate for vacancy announcement number LAG-ERO-1434830-BB-118.

195.     On July 30, 2015, Plaintiff received an automated message stating that he was not among the most highly qualified candidates for vacancy announcement number LAG-ERO-1434830-BB-118 based on his final score and that his name would not be referred.

196.     On October 5, 2015, Plaintiff learned about his non-selection for vacancy announcement number LAG-ERO-1434830-BB-118 via USA Jobs.

197.     Defendant selected Tracey Sanchez and Nigel Jason.

198.     Ms. Sanchez is a Caucasian female and approximately under the age of 40.

199. Mr. Jason is an African American male and approximately under the age of 45.

200. On November 15, 2015, Defendant placed Ms. Sanchez in the position.

201. On December 13, 2015, Defendant placed Mr. Jason in the position.

202. Matthew Albence was the selecting official for vacancy announcement number LAG-ERO-1434830-BB-118 for the selection of Ms. Sanchez.

203. Mr. Albence was the Assistant Director for Enforcement.

204. Mr. Albence is a white Caucasian male and was born in 1970.

205. Mr. Albence did not know Plaintiff.

206. Mr. Albence signed the selection memorandum for Ms. Sanchez.

207. Tom Feeley was the selecting official for vacancy announcement number LAG-ERO-1434830-BB-118 for the selection of Mr. Jason because Mr. Albence was out of the office.

208. Mr. Feeley was the Deputy Assistant Director.

209. Mr. Feeley is a white Caucasian male and was born in 1971.

210. Mr. Feeley was aware of Plaintiff's race, color, and sex.

211. Defendant reviewed and scored the resumes for vacancy announcement number LAG-ERO-1434830-BB-118.

212. The candidates with the highest scored resumes were offered the opportunity to interview.

213. The scores from the resume review and interview were combined and an aggregate score was used to rank applicants.

214. For Ms. Sanchez's selection, Arthur Wilson, Norman Parrish, and Sean Stephens reviewed and ranked the resumes.

215.  Arthur Wilson, Norman Parrish, and Joseph Williams were the interview panel for Ms. Sanchez.

216.  Arthur Wilson, Norman Parrish, and Joseph Williams reviewed and ranked the resumes for Mr. Jason's selection for vacancy announcement number LAG-ERO-1434830-BB-118.

217.  Mr. Wilson was Section Chief.

218.  Mr. Wilson is a black African American male and was born in 1969.

219.  Mr. Wilson does not know Plaintiff.

220.  Norman Parrish and Sean Stephens interviewed Mr. Jason.

221.  Mr. Parrish was the Unit Chief.

222.  Mr. Parrish and Plaintiff had a co-worker relationship with each other.

223.  Mr. Parrish was not aware of Plaintiff's race, age, or prior EEO activity, but that he was aware that Plaintiff was a black male.

224.  Mr. Parrish is a white male and was born in 1973.

225.  Mr. Stephens was the Program Manager.

226.  Mr. Stephens is a brown Hispanic male and was born in 1970.

227.  Mr. Stephens and Plaintiff previously worked with each other.

228.  Mr. Stephens was aware of Plaintiff's race, color, and sex, but he was not aware of Plaintiff's age or prior EEO activity.

229.  In August 2015, Mr. Parrish rated resumes and documented scores for vacancy announcement number LAG-ERO-1434830-BB-118 with other panel members.

230. The panel, Mr. Parrish, Mr. Wilson, and Mr. Stephens, scheduled the candidates with the top three scores for interviews for vacancy announcement number LAG-ERO-1434830-BB-118.

231. Mr. Parrish recommended both Ms. Sanchez and Mr. Jason for selection based on aggregate scores, from resumes and interviews, which ranked them the highest of individuals on the merit promotion lists.

232. Mr. Stephens reviewed resumes for vacancy announcement number LAG-ERO-1434830-BB-118.

233. Defendant only provided resumes for applicants on the Competitive Certification list to Mr. Stephens.

234. Mr. Stephens did not receive Plaintiff's resume for vacancy announcement number LAG-ERO-1434830-BB-118.

235. Mr. Stephens did not review Plaintiff's resume for vacancy announcement number LAG-ERO-1434830-BB-118.

236. The recommending official panel, Mr. Parrish, Mr. Stephens, and Mr. Wilson, reviewed and ranked resumes for applicants on the Competitive Certification list. They only looked at competitive applicants and not non-competitive applicants.

237. Mr. Wilson reviewed resumes and conducted interviews for vacancy announcement number LAG-ERO-1434830-BB-118.

**Announcement Number LAG-ERO-1369480-BB-095 (May 11, 2015).**

238. On May 11, 2015, Plaintiff applied as a non-competitive candidate for vacancy announcement number LAG-ERO-1369480-BB-095, for the position of Detention and Deportation Officer in the National Fugitive Operations Program via USA Jobs.

239.   Vacancy announcement number LAG-ERO-1369480-BB-095 is covered by AUO.

240.   Plaintiff emailed Mr. Homan on different dates regarding not being selected for this
       position.

241.   On June 3, 2015, Plaintiff received an automated message stating that he was qualified as
       a non-competitive candidate for vacancy announcement number LAG-ERO-1369480-
       BB-095.

242.   On October 14, 2015, Plaintiff was notified that he was not selected for vacancy
       announcement number LAG-ERO-1369480-BB-095 via USA Jobs.

243.   Plaintiff was a qualified applicant for vacancy announcement number LAG-ERO-
       1369480-BB-095.

244.   Plaintiff met the job requirements for vacancy announcement number LAG-ERO-
       1369480-BB-095.

245.   Since Plaintiff applied for vacancy announcement number LAG-ERO-1369480-BB-095,
       Defendant has hired a number of non-African American or brown employees.

246.   The hired employees for vacancy announcement number LAG-ERO-1369480-BB-095
       are younger and less experienced than Plaintiff.

247.   Plaintiff is older and more experienced than the selected candidates for vacancy
       announcement number LAG-ERO-1369480-BB-095.

248.   Since Plaintiff applied for vacancy announcement number LAG-ERO-1369480-BB-095,
       Defendant has selected younger and less experienced and less qualified candidates.

249.   Defendant selected Karl Kravchuk, Paul McBride, and Thomas Bartos for vacancy
       announcement number LAG-ERO-1369480-BB-095.

250.   On August 23, 2015, Defendant placed Mr. McBride in the position.

251.    On October 4, 2015, Defendant placed Mr. Bartos in the position.

252.    On October 18, 2015, Defendant placed Mr. Kravchuk in the position.

253.    Mr. Albence was the selecting official for vacancy announcement number LAG-ERO-1369480-BB-095.

254.    The selection panel reviewed and ranked resumes and candidates with the highest scoring resumes were offered the opportunity to interview.

255.    The scores from the resume review and interview were combined and an aggregate score was then used to rank the applicants.

256.    Mr. Kravchuk, Mr. McBride, and Mr. Bartos were the highest ranking applicants.

257.    Caleb Vitello, Juan Alvear, and LaShawn Powell were the recommending panel members for vacancy announcement number LAG-ERO-1369480-BB-095.

258.    Mr. Vitello was the Unit Chief for the National Fugitive Operations Programs.

259.    Mr. Vitello was aware of Plaintiff's color and sex, but not his race, age, or prior EEO activity.

260.    Mr. Vitello is a white Iranian male and was born in 1978.

261.    Mr. Alvear was a Detention and Deportation Officer.

262.    Mr. Alvear and Plaintiff knew each other before Plaintiff applied for vacancy announcement number LAG-ERO-1369480-BB-095.

263.    Mr. Alvear is aware of Plaintiff's race, color, and sex, but, he was not aware of Plaintiff's age or prior EEO activity.

264.    Ms. Powell is a black African American female and was born in 1979.

265.    Ms. Powell was a non-law enforcement employee and therefore not qualified to review law enforcement employee.

266.    Ms. Powell and Plaintiff knew each other before Plaintiff applied for vacancy
        announcement number LAG-ERO-1369480-BB-095.

267.    Ms. Powell was aware of Plaintiff's race, color, and sex, but, she was not aware of
        Plaintiff's age and prior EEO activity.

268.    Mr. Alvear is a white Hispanic male and was born in 1965.

269.    Mr. Vitello, Mr. Alvear, and Ms. Powell reviewed and ranked the resumes and then
        conducted the interviews for vacancy announcement number LAG-ERO-1369480-BB-
        095.

270.    The recommending panel members reviewed and scored resumes from candidates on the
        competitive list.

271.    Plaintiff was on the non-competitive list for vacancy announcement number LAG-ERO-
        1369480-BB-095.

272.    The recommending panel did not review or score Plaintiff's resume, and Plaintiff was not
        interviewed for vacancy announcement number LAG-ERO-1369480-BB-095.

**Announcement Number LAG-ERO-1436404-BB-119 (July 3, 2015)**

273.    On July 3, 2015, Plaintiff applied as a non-competitive candidate for vacancy
        announcement number LAG-ERO-1436404-BB-119, for the position of Detention and
        Deportation Officer via USA Jobs.

274.    Vacancy announcement number LAG-ERO-1436404-BB-119 is covered by AUO.

275.    On July 30, 2015, Plaintiff received an automated notice of results email confirming his
        application package for vacancy announcement number LAG-ERO-1436404-BB-119.

276.    On July 30, 2015, Plaintiff received an automated message stating that he was qualified as a non-competitive candidate for vacancy announcement number LAG-ERO-1436404-BB-119.

277.    On July 30, 2015, Plaintiff received an automated message stating that he was not among the most highly qualified candidates for vacancy announcement number LAG-ERO-1436404-BB-119 based on his final score and that his name would not be referred to the selecting official.

278.    On November 23, 2015, Plaintiff found out that he was not selected for vacancy announcement number LAG-ERO-1436404-BB-119.

279.    Plaintiff emailed Mr. Homan multiple times about not being selected for the position.

280.    Plaintiff was a qualified applicant for vacancy announcement number LAG-ERO-1436404-BB-119.

281.    Plaintiff met the job requirements for vacancy announcement number LAG-ERO-1436404-BB-119.

282.    Defendant selected Eric Ravenell, Karlo Midel, Michael Woodring, Fernando Armenta, Christina Henderson, and Juan Flores.

283.    On November 1, 2015, Defendant placed Mr. Ravenell in the position.

284.    On November 29, 2015, Defendant placed Mr. Flores, Ms. Henderson, Ms. Armenta, and Mr. Woodring in the position.

285.    On December 27, 2018, Defendant placed Mr. Midel in the position.

286.    Mr. Johnson was the selecting official for vacancy announcement number LAG-ERO-1436404-BB-119.

287.    Panel members reviewed and scored resumes.

288.   Panel members then interviewed the candidates based on their resume scores.

289.   Plaintiff was not interviewed for vacancy announcement number LAG-ERO-1436404-BB-119.

290.   The recommending panel members for vacancy announcement number LAG-ERO-1436404-BB-119 were George Robertson, Reginald Sakamoto, Paula Cohen, Rachel Frier, Jessie Gonzalez, Stephen Antkowiak, Denice Seemiller, and Lee Faulcon.

291.   Mr. Robertson was a Supervisory Detention and Deportation officer, Group Supervisor.

292.   Mr. Robertson did not know Plaintiff.

293.   Mr. Robertson is a white Hispanic male who was born in 1965.

294.   Mr. Sakamoto was a Supervisory Detention and Deportation Officer, Unit Chief.

295.   Mr. Sakamoto did not know Plaintiff.

296.   Mr. Sakamoto is a white Asian male and was born in 1963.

297.   Ms. Cohen was a Policy Analyst for Defendant.

298.   Ms. Cohen did not know Plaintiff.

299.   Ms. Cohen is a white Caucasian female and was born in 1952.

300.   Ms. Frier was a Management and Program Analyst for Defendant.

301.   Ms. Frier is a white Caucasian female who was born in 1981.

302.   Ms. Frier and Plaintiff know each other and Ms. Frier was aware of his color and sex.

303.   Ms. Frier was not aware of Plaintiff's race, age, or prior EEO activity.

304.   Ms. Gonzalez was a Unit Chief for Defendant and Plaintiff's co-worker.

305.   Ms. Gonzalez did not know Plaintiff's race, age, or prior EEO activity.

306.   Ms. Gonzalez is a light complexioned Hispanic female and was born in 1979.

307.   Mr. Antkowiak was the Chief.

308.    Mr. Antkowiak is a white Caucasian male who was born in 1977.

309.    Mr. Antkowiak did not know Plaintiff.

310.    Ms. Seemiller was the Acting Unit Chief.

311.    Ms. Seemiller did not know Plaintiff.

312.    Ms. Seemiller is a white Caucasian female and was born in 1966.

313.    Mr. Sakamoto was on the interview panel that recommended Mr. Woodring and Mr.
        Armenta for vacancy announcement number LAG-ERO-1436404-BB-119.

314.    Mr. Sakamoto did not review Plaintiff's resume or interview him for vacancy
        announcement number LAG-ERO-1436404-BB-119.

315.    Plaintiff's name and resume were not referred to Mr. Sakamoto for consideration.

316.    Ms. Cohen recommended Mr. Ravenell and Mr. Midel for selection for vacancy
        announcement number LAG-ERO-1436404-BB-119.

317.    Ms. Cohen reviewed Plaintiff's application for vacancy announcement number LAG-
        ERO-1436404-BB-119.

318.    Ms. Frier reviewed resumes and participated in the interview panel for vacancy
        announcement number LAG-ERO-1436404-BB-119.

319.    Ms. Frier reviewed Plaintiff's resume for vacancy announcement number LAG-ERO-
        1436404-BB-119.

320.    Ms. Frier recommended Mr. Ravenel and Mr. Midel for selection for vacancy
        announcement number LAG-ERO-1436404-BB-119.

321.    Ms. Gonzalez did not review resumes or determine who would be interviewed for
        vacancy announcement number LAG-ERO-1436404-BB-119, but she did interview
        candidates.

322. Ms. Gonzalez was not aware that Plaintiff was an applicant for vacancy announcement number LAG-ERO-1436404-BB-119.

323. Mr. Antkowiak had staff review and rank resumes for vacancy announcement number LAG-ERO-1436404-BB-119.

324. Mr. Antkowiak recommended Mr. Midel and Mr. Woodring for vacancy announcement number LAG-ERO-1436404-BB-119.

325. Ms. Seemiller reviewed and scored resumes and also conducted interviews for vacancy announcement number LAG-ERO-1436404-BB-119.

326. Mr. Robertson was only a member of the interview panel and not a member of the resume review panel for vacancy announcement number LAG-ERO-1436404-BB-119.

**Announcement number LAG-ERO-1167618-LKS-133 (July 30, 2014)**

327. On July 30, 2014, Plaintiff applied as a non-competitive candidate for vacancy announcement number LAG-ERO-1167618-LKS-133.

328. Vacancy announcement number LAG-ERO-1167618-LKS-133 had AUO.

329. On July 30, 2014, Plaintiff provided a memorandum for a lateral reassignment, which is supposed to be honored when an experienced officer makes a request.

330. Plaintiff submitted his application and cover letter memorandum to Assistant Director Marlen Pineiro.

331. Ms. Pineiro acknowledged Plaintiff's request via email and stated that she would forward it to the appropriate individuals.

332. Plaintiff and Ms. Pineiro have encountered each other multiple times.

333. Defendant did not select Plaintiff for vacancy announcement number LAG-ERO-1167618-LKS-133.

334.   Plaintiff was qualified for vacancy announcement number LAG-ERO-1167618-LKS-133.

335.   Plaintiff met the job descriptions for vacancy announcement number LAG-ERO-1167618-LKS-133.

336.   Defendant selected Jennifer Lamoureaux for vacancy announcement number LAG-ERO-1167618-LKS-133.

337.   Ms. Lamoureaux is less qualified and substantially younger than Plaintiff.

338.   Plaintiff did not receive any information regarding the selection package and selecting officials in the Report of Investigation from the Agency for vacancy announcement number LAG-ERO-1167618-LKS-133.

**Announcement Number LAG-ERO-1017870-LKS-100 (March 5, 2014).**

339.   On March 5, 2014, Plaintiff applied as a non-competitive candidate for vacancy announcement number LAG-ERO-1017870-LKS-100.

340.   Vacancy announcement number LAG-ERO-1017870-LKS-100 was a lateral position in the Criminal Alien Division that was covered by AUO.

341.   On March 5, 2014, Plaintiff sent Mr. Albence his application as a non-competitive candidate for vacancy announcement number LAG-ERO-1017870-LKS-100.

342.   Plaintiff sent his resume and memorandum cover letter to Mr. Albence.

343.   Plaintiff only received an acknowledgement of receipt and nothing further.

344.   Mr. Albence was the selecting official for vacancy announcement number LAG-ERO-1017870-LKS-100.

345.   Defendant did not select Plaintiff for vacancy announcement number LAG-ERO-1017870-LKS-100.

346.   Plaintiff was qualified for vacancy announcement number LAG-ERO-1017870-LKS-100.

347. Plaintiff met the job requirements for vacancy announcement number LAG-ERO-1017870-LKS-100.

348. Plaintiff and Mr. Albence have met multiple times through work in Washington, DC.

349. Younger and less experienced employees have been allowed to transfer to Plaintiff's requested position, including Detention and Deportation Officer James Brown and a Caucasian female officer.

350. Plaintiff did not receive any information regarding the selection package and selecting officials in the Report of Investigation from the Agency for vacancy announcement number LAG-ERO-1017870-LKS-100.

**Announcement number LAG-ERO-1434830-BB-1118 (July 6, 2015)**

351. On July 6, 2015, Plaintiff applied for vacancy announcement number LAG-ERO-1434830-BB-1118 via USA Jobs.

352. Plaintiff also sent a memorandum to Mr. Homan requesting to be transferred back to his previous unit, the Law Enforcement Systems and Analysis division.

353. The Law Enforcement Systems and Analysis division received AUO.

354. Defendant did not select Plaintiff for vacancy announcement number LAG-ERO-1434830-BB-1118.

355. Plaintiff was qualified for vacancy announcement number LAG-ERO-1434830-BB-1118.

356. Plaintiff met the job requirements for vacancy announcement number LAG-ERO-1434830-BB-1118.

357. On or about October 5, 2015, Plaintiff received an automated message from USA Jobs telling him that he was not selected for vacancy announcement number LAG-ERO-1434830-BB-1118.

358.   Defendant has brought in new staff into the Law Enforcement Systems and Analysis division from other duty stations that are not as qualified as Plaintiff.

359.   In 2011, Plaintiff filed an EEO complaint against the former Assistant Director, Marc Rapp of the Law Enforcement Systems and Analysis division.

360.   Mr. Rapp was still involved with that division when Plaintiff submitted his job application and transfer request to Mr. Homan for vacancy announcement number LAG-ERO-1434830-BB-1118.

361.   Mr. Rapp and Plaintiff used to work together.

**Plaintiff's Ignored Transfer Requests**

362.   In early 2014, Officers in Washington, DC for ERO were instructed to submit proposals for reassignment due to an anticipated loss of AUO.

363.   On February 20, 2014, Plaintiff submitted his lateral transfer request via email to Mr. Homan through Assistant Director Marc Rapp for a transfer to the Homeland Security Investigations ("HSI").

364.   Specifically, Plaintiff requested to be converted to a GS-1811-14 and to be transferred to HSI Baltimore as a Senior Special Agent or a Special Agent in a management position.

365.   Alternatively, Plaintiff wanted to be transferred to HSI Baltimore, MD on a temporary duty assignment as a Detention and Deportation Officer who received AUO.

366.   Plaintiff included his resume in his February 20, 2014 email.

367.   Plaintiff also requested to be placed in another unit that receives AUO.

368.   On February 20, 2014, Marc Rapp forwarded Plaintiff's transfer request to Randi Greenberg and told Mr. Greenberg to put Plaintiff on the list for Ms. Klopp.

369.   Plaintiff did not receive his requested lateral transfer.

370. Mr. Homan is aware of Plaintiff's race and color because Plaintiff filed a previous EEO discrimination complaint against Defendant in 2011.

371. Mr. Homan is aware of Plaintiff's age because Mr. Homan and Plaintiff have met on numerous occasions while working in Washington, DC.

372. Mr. Homan could gauge Plaintiff's age based on his resume.

373. Plaintiff has informed Mr. Homan of his previous EEO activity.

374. Defendant has granted numerous ERO employees' transfer requests to positions that receive AUO.

375. Defendant has honored a number of Caucasian officers' transfer requests for positions regarding Investigations.

376. Defendant ignored Plaintiff's February 20, 2014 request.

377. Female ERO employees have been sent on special details to other units and positions, while Defendant has ignored Plaintiff's transfer requests.

378. Employees that are younger than Plaintiff have been sent on special details to other units and positions, while Defendant has ignored Plaintiff's transfer requests.

379. On September 1, 2015, Plaintiff emailed Mr. Homan his request to transfer to a position in Baltimore that was certified for AUO.

380. Mr. Homan did not respond to Plaintiff.

381. Plaintiff included a memorandum outlining the reasons behind his lateral transfer request.

382. On October 8, 2015, Plaintiff sent Mr. Homan a follow-up email about his transfer requests.

383. Mr. Homan did not respond.

384.   Female employees, Jennifer Parker-Sheriff and Mai Mozelle, have been allowed to transfer out of the ERO Unit or be moved to other favorable positions.

385.   Ms. Jennifer Parker-Sheriff and Ms. Mai Mozelle are not law enforcement officers, like Plaintiff.

386.   On or about September and October 2015, Plaintiff followed-up with Mr. Homan regarding his lateral transfer requests.

387.   Plaintiff has experienced an excessive amount of emotional distress since losing his AUO and struggling with the Agency's discrimination, harassment, and retaliation.

388.   Due to emotional distress, Plaintiff has suffered from lack of energy and has been emotionally and physically drained from working in the ERO Taskings Unit.

389.   On September 28, 2018 Plaintiff retired.

390.   Plaintiff retired due to ongoing retaliation and a hostile work environment.

391.   Plaintiff experienced physical and emotional stress that caused him to take an excessive amount of leave prior to his retirement.

## COUNT I
### (AGE DISCRIMINATION IN VIOLATION OF THE ADEA 29 U.S.C. § 623)

392.   Plaintiff incorporates and re-alleges the prior allegations as if fully set forth herein.

393.   This action is brought pursuant to the Age Discrimination Employment Act 29 U.S.C. § 621, *et seq.*

394.   Other similarly situated employees outside of Plaintiff's age group were not subjected to the same conditions of employment as Plaintiff:

   a.   From September 2014 to September 2018 Plaintiff has been subjected to unreasonable workload and unreasonable deadlines and instructions that require Plaintiff to do twice as much work.

b.  From September 2014 to September 2018, Defendant allowed contractors to duplicate and unnecessarily instruct Plaintiff on work assignments, which violates government policy.

c.  From September 2014 to September 2018, Plaintiff lost his AUO certification while other employees in his unit were still receiving it.

d.  In July 2015, management took out a newly hired employee to lunch.

e.  Between September 30, 2014 through August 2015, management allowed contractor and government staff to use abusive, obscene, and hostile language, and make frivolous complaints via emails about Plaintiff.

f.  Plaintiff applied for lateral reassignments to other GS-1801-14, Detention and Deportation Officer positions within ICE and was not selected.

g.  Plaintiff requested from management to be laterally reassigned to other GS-1801-14, Detention and Deportation Officer positions in ICE, but his requests were either denied or he did not receive an answer.

395.  A causal connection exists between Defendant's adverse actions and Plaintiff's age.

396.  The aforesaid discriminatory treatment by Defendant toward Plaintiff caused Plaintiff tangible harm in that they affected the terms, conditions, and privileges of his employment.

397.  Defendants' aforementioned actions reflect directly on a discriminatory attitude toward Plaintiff.

398.  Defendants' actions constituted a violation of 29 U.S.C. § 621, *et seq.*

399.  In addition to the above, Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

400.   Defendants' conduct was malicious, willful, and intentional.

## COUNT II
## (RACE DISCRIMINATION IN VIOLATION OF TITLE VII 42 U.S.C. § 2000e *et seq.*)

401.   Plaintiff incorporates and re-alleges the prior allegations as if fully set forth herein.

402.   This action is brought pursuant to 42 U.S.C. § 2000e *et seq.* through the actions

delineated above.

403.   Other similarly situated employees outside of Plaintiff's race were not subjected to the

same conditions of employment as Plaintiff.

404.   Defendant's aforementioned conduct directly reflects a discriminatory attitude toward

Plaintiff.

405.   Defendant's conduct was malicious, willful, and intentional.

406.   Defendant's aforementioned actions against Plaintiff were based on his race.

407.   Plaintiff's race was a motivating factor in Defendant's discriminatory treatment of

Plaintiff.

408.   Plaintiff's race was the motivating factor in Defendant's discriminatory treatment of

Plaintiff.

409.   The aforesaid discriminatory treatment of Plaintiff caused tangible harm to Plaintiff in

that it affected the terms, conditions, and privileges of his employment.

410.   A causal connection exists between Defendant's discriminatory actions and Plaintiff's

race.

411.   Defendant's actions caused Plaintiff monetary damages.

412.   In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness,

shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

## COUNT III
## (COLOR DISCRIMINATION IN VIOLATION OF TITLE VII 42 U.S.C. § 2000e *et seq.*)

413.   Plaintiff incorporates and re-alleges the prior allegations as if fully set forth herein.

414.   This action is brought pursuant to 42 U.S.C. § 2000e *et seq.* through the actions

delineated above.

415.   Other similarly situated employees outside of Plaintiff's color were not subjected to the

same conditions of employment as Plaintiff.

416.   Defendant's aforementioned conduct directly reflects on a discriminatory attitude toward

Plaintiff.

417.   Defendant's conduct was malicious, willful, and intentional.

418.   Defendant's aforementioned actions against Plaintiff were based on his color.

419.   Plaintiff's color was a motivating factor in Defendant's discriminatory treatment of

Plaintiff.

420.   Plaintiff's color was the motivating factor in Defendant's discriminatory treatment of

Plaintiff.

421.   The aforesaid discriminatory treatment of Plaintiff caused tangible harm to Plaintiff in

that it affected the terms, conditions, and privileges of his employment.

422.   A causal connection exists between Defendant's discriminatory actions and Plaintiff's

color.

423.   Defendant's actions caused Plaintiff monetary damages.

424.   In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness,

shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

## COUNT IV
### (SEX DISCRMINATION IN VIOLATION OF TITLE VII 42 U.S.C. § 2000e *et seq.*)

425.    Plaintiff incorporates and re-alleges the prior allegations as if fully set forth herein.

426.    This action is brought pursuant to 42 U.S.C. § 2000e *et seq.* through the actions delineated above.

427.    Other similarly situated employees outside of Plaintiff's sex were not subjected to the same conditions of employment as Plaintiff.

428.    Defendant's aforementioned conduct directly reflects on a discriminatory attitude toward Plaintiff.

429.    Defendant's conduct was malicious, willful, and intentional.

430.    Defendant's aforementioned actions against Plaintiff were based on his sex.

431.    Plaintiff's sex was a motivating factor in Defendant's discriminatory treatment of Plaintiff.

432.    Plaintiff's sex was the motivating factor in Defendant's discriminatory treatment of Plaintiff.

433.    The aforesaid discriminatory treatment of Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions, and privileges of his employment.

434.    A causal connection exists between Defendant's discriminatory actions and Plaintiff's sex.

435.    Defendant's actions caused Plaintiff monetary damages.

436.    In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

## COUNT V
## (RETALIATION IN VIOLATION OF TITLE VII 42 U.S.C. § 2000e *et seq.*)

437.   Plaintiff incorporates and re-alleges the prior allegations as if fully set forth herein.

438.   Plaintiff was retaliated against by Defendant in violation of 42 U.S.C. § 2000e *et seq.* through the aforementioned actions.

439.   Defendant's aforementioned actions against Plaintiff were taken in retaliation for opposing unlawful employment practices in violation of 42 U.S.C. § 2000e-3.

440.   Plaintiff engaged in protected activity by filing an EEO complaint in 2011 and reporting race discrimination against management.

441.   Defendant was aware of Plaintiff's protected activity.

442.   The aforementioned actions caused tangible harm to Plaintiff in that they affected the terms, conditions, and privileges of his employment.

443.   Plaintiff's protected activity was the cause of Defendant's aforementioned actions.

444.   Other similarly situated employees outside of Plaintiff's class were not subjected to the same conditions of employment as Plaintiff.

445.   A causal connection exists between Defendant's aforementioned actions and Plaintiff's protected activity.

446.   Defendant's action caused Plaintiff monetary damages.

447.   In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a.   Compensatory Damages;

b.   Backpay;

c.  Attorneys' fees;

d.  Costs and interest;

e.  And any other relief the Court may deem proper.

Dated: November 9, 2018                    Respectfully Submitted,

> */s/ Morris E. Fischer*
> Morris E. Fischer, Esq.
> DC Bar No. 490369
> Morris E. Fischer, LLC
> 8720 Georgia Avenue
> Suite 210
> Silver Spring, MD 20910
> Morris@mfischerlaw.com
> (301) 328-7631 phone
> (301) 328-7638 fax
> *Attorney for Plaintiff*

## PLAINTIFF'S JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff by counsel herein serves his jury demand upon Defendant. Plaintiff hereby demands a jury trial on all issues so triable.

Dated: November 9, 2018                    Respectfully Submitted,

> */s/ Morris E. Fischer*
> Morris E. Fischer, Esq.
> DC Bar No. 490369
> Morris E. Fischer, LLC
> 8720 Georgia Avenue
> Suite 210
> Silver Spring, MD 20910
> Morris@mfischerlaw.com
> (301) 328-7631 phone
> (301) 328-7638 fax
> *Attorney for Plaintiff*